EXHIBIT 1

Electronically FILED by Superior Court of California, County of Los Angeles on 12/06/2021 02:02 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Marquez,Deputy Clerk

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

| |
|---|
| **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
FLOWSERVE U.S. INC., a Delaware Corporation

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
THERESA OVERING, an individual

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: *(Número del Caso):* |
|---|---|
| *(El nombre y dirección de la corte es):* Compton Courthouse<br>200 West Compton Blvd.<br>Compton, CA 90220 | 21CMCV00324 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Edward C. Wilde; 790 E. Colorado Blvd., Ste. 320, Pasadena, CA 91101; (626)564-8600

| DATE:<br>*(Fecha)* 12/06/2021 | Clerk, by<br>*(Secretario)* R. Marquez | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)* Sherri R. Carter Executive Officer / Clerk of Court
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*



[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |
|---|---|---|

Case 2:22-cv-00150-FLA-AGR    Document 1-3    Filed 01/07/22    Page 3 of 35    Page ID #:13
21CMCV00324
Assigned for all purposes to: Compton Courthouse, Judicial Officer: Thomas Long
Electronically FILED by Superior Court of California, County of Los Angeles on 12/06/2021 04:14 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Marquez,Deputy Clerk

LAW OFFICES OF MICHAEL S. OVERING, APC
Michael S. Overing, Esq. (143858)
Edward C. Wilde (144809)
790 E. Colorado Blvd., Suite 320
Pasadena, CA 91101
Tel:    (626) 564-8600
Fax:    (626) 577-9400

Attorneys for Plaintiff, Theresa Overing

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – SOUTH CENTRAL JUDICIAL DISTRICT

| | |
|---|---|
| THERESA OVERING, an individual<br><br>Plaintiff<br><br>v.<br><br>FLOWSERVE U.S. INC., a Delaware Corporation<br><br>Defendant | Case No.  21CMCV00324<br><br>**COMPLAINT FOR DAMAGES:**<br>   1) **DISCRIMINATION AND HARASSMENT, VIOLATION OF FEHA**<br>   2) **AGE DISCRIMINATION ADEA**<br>   3) **WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**<br>   4) **WARN ACT VIOLATION**<br><br>JURY TRIAL DEMANDED |

Comes now plaintiff Theresa Overing who alleges as follows:

**Parties and Venue:**

1.  Plaintiff Theresa Overing, an individual, is and at all times herein relevant was, a resident of Los Angeles County, California.

2.  Defendant Flowserve U.S. Inc., is a Delaware Corporation, doing business in California.

- 1 -
COMPLAINT

3.  Plaintiff was an employee of Flowserve from the years 2014 until 2021.  Her principal place of employment was at the Flowserve facility located in Rancho Dominguez, Los Angeles County, California. Accordingly, this action is properly venued in Los Angeles County, California.

4. This court has jurisdiction over this action pursuant to Code of Civil Procedure section 410.10. The principal events relating to this litigation took place in Los Angeles County. The primary witnesses are located in Los Angeles County. Defendant Flowserve does business in Los Angeles County.

**Exhaustion of Administrative Remedies.**

5. On June 2, 2021, plaintiff filed a claim with the United States Equal Employment Opportunity Commission (EEOC). On September 8, 2021, the EEOC issued a Dismissal and Notice of Rights. On July 15, 2021, plaintiff submitted a Charge of Discrimination to the California Department of Fair Employment & Housing. The EEOC issued a Notice of Right to Sue to plaintiff.  Accordingly, this Court has jurisdiction over this action pursuant to California Government Code section 12965.

**Factual Allegations**

6.  Defendant Flowserve is an international corporation, with operations in over 50 countries. Flowserve has published a "Code of Conduct." Attached hereto as exhibit "A" and incorporated herein by reference is a true and correct copy of Flowserve's Code of Conduct as published on the corporate website at https://www.flowserve.com/sites/default/files/inline-files/flowserve-conduct-code-e.pdf On the company website Flowserve makes the following representations concerning the company's "Ethics":

> ETHICS
> Flowserve culture is centered on ethics, integrity and trust. Our values drive how we treat each other, our customers, suppliers, partners and even our competitors. By combining uncompromising character, transparent business behavior, mutual respect, and world-class

products and services, we seek to build an enduring culture that creates satisfied customers, engaged employees and sustainable, profitable growth.

Around the world, Flowserve facilities hold regular ethics meetings and develop programs that keep ethical business practices top of mind. All Flowserve employees and partners must comply with all U.S. and local laws regarding proper business conduct in obtaining and retaining business, including the United States Foreign Corrupt Practices Act (FCPA). As part of our commitment to transparency, we invite you to read our Code of Conduct below, which details our expectations regarding our ethical culture and business practices.

Our core values - people, safety, integrity, innovation, ownership and excellence are what set us apart from the competition. They are the qualities by which we want our customers to identify Flowserve, and we strive to live by these values every day.

If you ever encounter a situation you feel compromises the Flowserve ethical standards or violates our company's Code of Conduct, please contact Flowserve management or use the incident reporting tool (Flowserve Ethics Hotline) that will help you submit a concern online or over the phone.

On the corporate website, Flowserve also claims that it promotes a culture of "speaking up":

Speaking Up

Flowserve provides several avenues through which associates can raise concerns, ranging from reporting to members of management, human resources or to our anonymous hotline. We also provide an Investigations Playbook to provide transparency about investigations and encourage our associates to speak up and report any unethical or questionable conduct. To continuously evaluate our Speaking Up resources, the Integrity & Compliance team regularly monitors and analyzes hotline metrics and trends, including the number of overall reports, the number of reports made anonymously, and the types of issues being reported, with global, regional and business platform breakdowns.

7. Such representations constitute contractual representations of the nature of employment at Flowserve. Yet, as will be set forth herein below, plaintiff did not experience a corporate culture which aligned with Flowserve's public representations and which formed her reasonable expectations of how she would be treated during the course of her employment. Plaintiff has 32 years of experience in Human Resources (HR), including over 20 years with Boeing and Raytheon. These global companies are known for best-in-industry practices and exceptional training programs. She has held positions requiring deep expertise (e.g., Employee Relations Specialist), and broad capabilities (e.g., HR Business Partner.) She has worked at all levels of the organization, including with executives at Boeing. She has a successful track record of HR leadership on teams and projects to innovate and redesign key HR processes. She has a Masters degree in Business Administration from the University of Southern California and a Bachelor's Degree from UCLA, both premier and elite educational institutions. Holding her MBA degree made Ms. Overing one of

the two most highly educated employees in her HR team at Flowserve.   Plaintiff is informed and believes and based upon such information and belief alleges that she was the only employee on her HR team to hold an SPHR (Senior Professional in HR) certificate from the HR Certification Institute.  She achieved the certificate in 2011 and has renewed it three times through continued experience and education.

8. Ms. Overing began working with Flowserve as a regional Human Resources Business Partner (HRBP) in 2014. Her salary grade, "HR Specialist," is the highest level for an individual contributor.  In 2021, she was the oldest of the seven HRBPs working in Flowserve's North America AMSS (Aftermarket Services and Solutions) operation. She was at least 20 years older than and possessed 20 years more experience than four of her co-workers. Furthermore, she had more years of seniority with Flowserve than most of her co-workers, who were hired in 2020 and 2021.

9. Flowserve's North America AMSS HR team provided HR support for Flowserve's manufacturing and repair sites across the U.S. and Canada.  Over the course of her employment with Flowserve, Ms. Overing supported sites in Rancho Dominguez, Temecula, and Benicia, California; Broomfield, Colorado; Vancouver and Bellingham Washington; West Chicago and Woodridge, Illinois; Tulsa, Oklahoma; Leduc, Fort McMurray, and Edmonton, Canada.  She also provided backup and temporary support for a site in Vernon, California, and sites in the Gulf States.

10.  As an HRBP, Ms. Overing provided a full range of HR services to management and employees, including talent acquisition, compensation, training, and employee relations.  Like other HRBPs, she guided managers through annual HR initiatives, such as, but not limited to, performance appraisals, succession planning, merit pay increases.  In addition, she participated in HRBPs HR process improvement teams.

11. Because of her experience and skills, Ms. Overing distinguished herself with many additional projects and successes.  In 2017, she was assigned to travel to Flowserve's manufacturing site in Trappes, France, to train a new HRBP.  She spearheaded an organizational redesign to establish a center of excellence for Design Drafters across North America AMSS Seals operations. She successfully responded to unique requirements, such as Washington's prevailing wages laws and Alaska's COVID restrictions while the company was building a new repair center in Kenai, Alaska. She created training modules for New Supervisors, and a New Employee Orientation.  She revised forms and processes.  She led teams to consolidate the purchase of compliance posters at 75 sites. She participated on many process improvement teams, such as a team to revise the paid time off policies, a team to establish on-line personnel folders, and a team to standardize progressive discipline processes.  As the new, younger HRBPs were hired, she became a go-to mentor for providing advice and instructions, and materials from her personal files, such as the library of standardized, well-written job descriptions she created.  Furthermore, Ms. Overing developed a strong rapport with the managers she supported, and they leaned on her for counsel regarding their operations and their own professional development.

12.  The regional HRBP basic functions were interchangeable; that is, one HRBP could assume the tasks of another HRBP at a different location.  However, Ms. Overing distinguished herself with value-added projects and the relationships as described above.

13.  At the end of 2020, Flowserve employees Dana Bergman ("Bergman") and Traci Milliner ("Milliner") took over leadership of Human Resources for Flowserve's North American Aftermarket Services and Solutions (HR AMSS). Bergman was a Director, Milliner was a manager reporting to Bergman.  Ms. Overing reported to Milliner.  Shortly after Bergman and Milliner took over direct supervision of Ms. Overing's work, they began to hire younger, less experienced HRBPs.  They reassigned her job responsibilities to younger employees. These reassignments reduced the number of employees that Ms. Overing supported, and most importantly, eliminated Ms. Overing's support of director-level managers.  Some of these directors were located at Rancho

Dominguez and at Vernon where Ms. Overing maintained offices.  An HRBP supporting directors had more strategic, visible, impactful projects that were aligned with the responsibilities of the director. Overing complained about the fact of these reductions and Milliner took no action to correct the imbalance.

14.  At the time Ms. Overing's work was reassigned away from her to younger employees, there had been no complaints known by Ms. Overing from the managers and employees concerning her work quality or abilities. In fact, one of the site leaders wrote to her, "It has been invaluable to have someone with your experience and fortitude on our side.  Thank you sooo much for your support and positive attitude.  It is truly great to work with you."  Despite her excellent qualifications, experience, and performance, Bergman and Milliner undercut Ms. Overing's position. Plaintiff is informed and believes and based upon such information and belief alleges that Bergman and Milliner reassigned and diminished Ms. Overing's status and work based upon the only quality known to Bergman and Milliner, Ms. Overing's age.

15.  In December 2020, shortly after Bergman and Milliner began their supervision of Ms. Overing, Ms. Overing supported approximately 350 employees in multiple states, including 35 managers. Six of these managers were directors.  Bergman and Milliner then began their work of reducing Ms. Overing's position. By the end of Q1 2021, after the hiring of several junior and much younger HRBPs, and the reassignment of her work to these HRBPs, Ms. Overing's position was diminished to supporting only 220 employees, including only 20 managers.  She did not support a single director.  This reduction in the number and quality of her assignments effectively degraded Ms. Overing's position even though she had not failed to perform as required by her position.

16.  Evidence of Bergman and Milliner's animus toward HRBP's based upon age can be seen in the fact that Bergman and Milliner also diminished the work of fellow HRBP Ken Grooms who was aged 51: prior to Bergman and Milliner, his position entailed the supervision of Flowserve Directors. By the end of Q1 2020 and the hiring of younger HRBPs he supported no directors.  By

1  way of contrast, new hire Ashanti Mims who was in her early 30s was assigned to six directors,

2  including vice presidents of Flowserve.

3

4  17.  Ms. Overing repeatedly told Milliner that she no longer had any directors to support. For

5  example, Ms. Overing—pre-Bergman and Milliner—had supported the Field Services Team and its

6  director. She asked repeatedly to continue to support this director. But rather than permit her to

7  continue with the support, Field Services was eventually reassigned to Zainab Alaka, a new hire

8  who was then in her 20s. Ms. Alaka's Linkedin page states that she has an Associate's Degree from

9  Devry University.  Her most recent employment prior to Flowserve was as an HR Intern. Prior to

10  her internship she was a Senior Desk Clerk. Without question, the reassignment to Ms. Alaka could

11  not be due to greater experience or knowledge of the HR field.

12

13  18.  In addition to diminishing Ms. Overing's status and attempting to cause Ms. Overing to fail,

14  Bergman and Milliner sought to draw attention to Ms. Overing's age. During a Zoom baby shower

15  for Ms. Mims, and the showing of other employees' pictures of their babies, Milliner asked

16  everyone to answer the question, "What were you doing five years ago?" Ms. Overing said that she

17  was dropping off one of her sons at college.  Zainab Alaka replied, "Gee, I wasn't even out of

18  school yet!" By drawing unnecessary and excessive attention to Ms. Overing's age in front of her

19  much-younger co-workers, she felt stigmatized.

20

21  19.  Furthermore, both Bergman and Milliner had bullying, demeaning ways of speaking to Ms.

22  Overing, especially when she asked questions about their approaches or reasoning. Bergman

23  barked, "Do you understand what I am telling you to do?  Can you just do it, or do I need to get

24  someone else to do it?"  Milliner announced, before any questions were asked, "This is a decision

25  Dana made.  We won't discuss it.  We're just going to do it."  Their responses indicated to Overing

26  that they disliked the input of senior employees, and explained their preference to work with

27  younger, junior employees who had less knowledge and experience and were therefore less likely to

28  speak up in meetings.

20.  Not only did Milliner diminish Ms. Overing's status and employment opportunities, Milliner assigned tasks to Ms. Overing apparently to set her up to fail. For example, Milliner assigned Ms. Overing oversight of three Canadian facilities, knowing that Ms. Overing had no knowledge of or training in Canadian employment law.  Canadian employment law is very different than U.S. employment law, and the Alberta Province has more complexities.  To make matters worse, Ms. Overing was not granted access to the online HR portal used by Canadian employees. There was no legitimate business purpose for Milliner to assign Ms. Overing Canadian plants and then not take the necessary actions to ensure that Ms. Overing had the tools to perform her job. To her credit, Ms. Overing succeeded through self-education and research, and through the strong relationships she built with the Flowserve managers in Canada. However, such actions appear to constitute an attempt force Ms. Overing to quit her position, or to tarnish her performance.

21.  Milliner told Ms. Overing that Ms. Overing was doing too much "administrative" work, and not enough "strategic" work.  Administrative work is the basic core of HR work, and it includes tasks such as posting job openings, facilitating promotions and pay increases, and working with managers to improve and review employees' conduct or performance.  "Strategic" work is the value-added counsel and projects that enhance the business' competencies, capacity, and operations.  Strategic HR work requires an experienced HR professional with established, trusted relationships with internal business leaders.  It also requires the opportunity to do such work.  By reassigning all directors away from Ms. Overing, who was the most educated and experienced HRBP on the team, Ms. Overing was limited from performing strategic work and was relegated by Milliner to perform mostly administrative work. Thereafter, on numerous occasions Milliner would question Overing "why" she wasn't more "strategic" knowing full well she had reassigned all support functions of executives to junior employees.

22.  Moreover, Bergman failed to include Ms. Overing in discussions about strategic actions affecting the operations and leaders that Ms. Overing supported.  Bergman made decisions about reorganizations and layoffs without obtaining Ms. Overing's input or communicating to her with

1  anything but the most minimum of advance notice. Bergman engaged with the leaders about the

2  decisions, and then instructed Ms. Overing to complete the paperwork and notify the individual

3  employees.   In all of Ms. Overing's experience, the HRBP was always engaged in these discussions

4  because the HRBP had relevant, detailed information about the employees.  Bergman was

5  purposefully excluding Ms. Overing from the strategic aspects of her job.  Bergman did not include

6  Ms. Overing in problem-solving discussions about standardizing job titles at the repair centers

7  (which would be strategic work), but then assigned Ms. Overing the task of inputting the changes

8  into the employment database (administrative work).  Ms. Overing was not included in any of the

9  discussions regarding the closure of the Tulsa manufacturing site, and was excluded from Milliner's

10 site visits, even though it was Overing's job to support the Tulsa Plant Manager.  Indeed, Ms.

11 Overing had direct experience in plant closures, having been the HR liaison to the VP&GM and the

12 Management Council of a large Boeing site that closed.  In this instance, she was engaged in

13 discussions long before the news was made public. In contrast, Milliner actually hid the closure

14 information from Ms. Overing.

15

16 23.  In another instance of reducing Ms. Overing's responsibilities, Bergman and Milliner pulled

17 Ms. Overing from the investigation and decisions regarding employee misconduct at the Tulsa

18 manufacturing facility.  Ms. Milliner took over after Ms. Overing was already working the case, and

19 this change publicly humiliated Ms. Overing.  Once the decision was made to fire seven employees,

20 Ms. Overing was once again engaged, but only to complete the paperwork and notify the

21 employees.

22

23 24.  In 2020, Laura Kellem was assigned to lead a team to develop supervisory training. Ms. Kellem

24 is over 20 years younger than Ms. Overing, and Ms. Overing has far more experience in

25 instructional design and management training.  Ms. Overing has over six years of direct experience

26 at Boeing in Training and Development.  In this role, she led a team of PhDs to develop a training

27 curriculum that was rolled-out to 2000 employees. Ms. Overing brought this experience to

28 Flowserve by developing and conducting short training modules for the new supervisors she

supported.  Her co-workers and Ms. Milliner knew that she had developed training modules for new supervisors.  There was no legitimate business reason to assign this project to Ms. Kellem, and not Ms. Overing.

**Employment Law Violations at Flowserve**

25.  In addition to the age discrimination, another apparent rationale for Bergman and Milliner's unjust treatment of Ms. Overing stems from Ms. Overing's refusal to overlook Flowserve's violations of California labor law.  She was a thorn in the side of her managers and Flowserve's legal department. Nevertheless, Flowserve terminated her employment rather than address the violations she reported.

26.  In or about 2016, Ms. Overing learned that Flowserve was not complying with California wage and hour law.  The Flowserve Temecula facility runs a "4 x 10" manufacturing schedule, but it does not provide daily overtime pay required by state law. When Overing was first hired and asked about the schedules and compensation, she was assured that the employees had elected the alternative work week schedule.  However, Flowserve's alternative schedule was not registered with the State of California.  Moreover, there were no records at the site or in HR regarding the election.

27.  When Ms. Overing discovered Flowserve was cheating the employees out of their wages in violation of law, she immediately made a written report to Ron Sorensen, North America HR Director, and Susan Hudson, Flowserve's in-house legal counsel. Rather than rectify the situation, Sorensen told Ms. Overing, "Let sleeping dogs lie."

28.  Also, shortly after she was hired in 2014, Ms. Overing told Sorensen that Flowserve was not complying with the sexual harassment training required by law to be provided to supervisors. Ron Sorensen told her that "Legal" was taking care of this. An online training program was purchased and put on Flowserve's learning portal, but Ms. Overing saw no effort to either implement the

1   training or to keep records of the training. In about 2018, Ms. Overing took the initiative to get the

2   Learning department to send automated notices to supervisors who had not taken the training.

3   However, the system could not generate useful reports to track completions, and there was no

4   support or interest from HR management or Legal to comply with the law.  Ms. Overing resigned

5   herself to let the Legal Department handle the matter of compliance with California's training

6   requirements since complaining was of no use and ignored.

7

8   29.  In 2020, after the hire of attorney Saba Alvi, Ms. Overing told her about the failure of

9   Flowserve to comply with both the California overtime compensation laws, and training

10  requirements. In February 2020, during a visit by Milliner to California, Ms. Overing told Milliner

11  of Flowserve's failure to comply with sexual harassment training requirements and the failure to

12  comply with wage and hour law. Alvi and Milliner took no action.

13

14  30.  In March 2021, when a new attorney was hired by Flowserve to support NAMSS HR, Ms.

15  Overing again reported to him during a telephone call about the failure of Flowserve to comply with

16  the training requirements and the failure to pay workers overtime compensation. That attorney told

17  Ms. Overing, that they "should have a meeting." That attorney contacted Milliner, who then

18  contacted Ms. Overing to discuss the issues. Ms. Overing was laid-off within weeks of this

19  discussion with no action taken.

20

21  31.  In all, Ms. Overing told three Flowserve employment lawyers, three HR managers, and other

22  operational managers about the company's failure to comply with state law.  She became a thorn in

23  their side and a whistle-blowing threat, and her employment was terminated.

24

25

26

27

28

**Refusing a Transfer**

32.  In March 2021, an HRBP position opened at the Flowserve manufacturing facility in Vernon, California.  Ms. Overing was well-qualified for the position.  Several years prior, Sorensen asked her to establish a regular presence at the Vernon site to provide mentorship to a newly promoted and less experienced HRBP.  Ms. Overing maintained an office at the site, working there once per week, and supported the Engineering team at the site (until the Engineering Director and his team were reassigned to the newly hired, younger Ashanti Mims.)   Ms. Overing was the backup for the previous HRBP, and Ms. Overing supported her by participating in the 2017 USW-Flowserve CBU negotiations, and by occasionally handling employee grievances.  Before formally applying for the position, Ms. Overing told Milliner that she was going to apply.  Milliner told her that she was not going to be allowed to apply, because Milliner planned on giving Ms. Overing a poor performance review.   This was the first indication that Milliner was threatening her position and that Milliner was going to unjustly give Ms. Overing a poor performance review.  However, the existence of a poor performance review does not bar an employee from applying for an open position. Plaintiff is informed and believe and based upon such information and belief alleges that Milliner's threatened poor performance review and barring Overing from applying for the transfer were pretextual and done in retaliation against Overing for Overing not "overlooking" the actions being done by Flowserve in violation of California public policy. If Ms. Overing had been permitted to make this inter-company transfer, she would have not been subjected to a pretextual termination based upon the closure of the Tulsa facility, as alleged below. Importantly, Overing was not terminated for poor performance and did not receive a poor performance review prior to her dismissal.

**Wrongful Termination**

33.  Berman and Milliner were unable to force Ms. Overing to resign by reducing and minimizing the scope and importance of her work, and they were unable to force her to resign by humiliating her.  Eventually they laid her off because of her age and because of her refusal to overlook the

1   violation of California law and fundamental public policy. Flowserve used the pretext that she was

2   being laid off because Flowserve was closing the Tulsa manufacturing site, which Overing

3   supported.

4

5   34.  On a Friday, Flowserve announced that the Tulsa site was being closed, and the work was being

6   moved to a Flowserve plant in Mexico.  The workers were issued a WARN Notice which is

7   required by law.  On the next Monday, Milliner gave Overing notice that she was being laid off,

8   ostensibly because the Tulsa site was being closed.  HRBP Julie Dixon was also on the call. When

9   Overing asked, "What is the decisional group?"  (The decisional group is the group of employees

10  from which the employee is selected.)  The response was first, "You're the only HRBP in

11  California," and then changed to "You support Tulsa, and that site is closing."  This answer shows

12  the lack of clarity about the excuses for the layoff, when the real reason was that Ms. Overing was

13  selected from the AMSS HR team due to her age and her repeated whistle-blowing.  There are over

14  70 Flowserve facilities in the U.S. and Canada.  She had only been assigned the Tulsa site at the end

15  of 2020.  As demonstrated by previous reassignments of employee groups and locations amongst

16  the HRBPs, a younger, less-experienced HRBP should have been laid off, and that HRBP's work

17  should have been assumed by the remaining team, including Ms. Overing.  She was most certainly

18  targeted for layoff and her colleagues were unlawfully retained.  The fact that Milliner had not made

19  a proper evaluation for selecting Overing for layoff, and could not demonstrate the basic

20  understanding of how the decisional group evaluations were implemented, shows a level of

21  corruption in decision making by Milliner, as well as Bergman, who approved the layoff.

22

23  35.  In the scenario, assuming that Overing was targeted from within the AMSS HR team, then

24  Flowserve should have provided her details regarding the decision group, as required by the

25  OWBPA Act. Section 7(f)(1)(H) of the ADEA requires that the employer at the time of termination

26  inform

27

28          the individual in writing in a manner calculated to be understood by the average individual
          eligible to participate, as to -

(i) Any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and

(ii) The job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

At the time of her termination, Flowserve did not provide Ms. Overing with the required information: she was not informed of the decisional unit from which she was selected, nor did Flowserve provide the job title or ages of the other eligible persons in the decisional unit. Plaintiff is informed and believes and based upon such information and belief alleges that the reason such information was not provided was that Flowserve, by and through its agents, employees, officers, or other similar person, knew the termination of plaintiff's employment was made in violation of applicable law and was done for the purpose of (1) discriminating against plaintiff on the basis of her age; and (2) done in retaliation for plaintiff seeking to uphold fundamental California public policy. Thus, the termination is insupportable by law. Following the pretext that she was laid off because of the Tulsa closure, then Flowserve should have provided her notice as required by the State and Federal WARN Act.  Instead of getting 60 days of notice, she given just a few hours to pack her belongings and go.  In either scenario, Flowserve did not comply with basic laws regarding notices to employees, along with laws the most important laws regarding discrimination, harassment, and retaliation.

36. Plaintiff is informed and believes and based upon such information and belief alleges that all actions undertaken by Flowserve, its agents and/or employees, and defendants, and each of them, as alleged herein were known and ratified by the relevant corporate managers, and that all agents and employees acted within the course and scope of their agency and/or employment.

**FIRST CAUSE OF ACTION**
Discrimination and Harassment, Violation of FEHA
Against All Defendants

37.  Plaintiff incorporates the allegations of paragraphs 1 through 36 as though fully set forth hereat.

38.  At all times herein relevant, Ms. Overing was over the age of 40.

39.  California Government Code section 12940 provides in pertinent part:

> It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: (a) For an employer, because of the…, age, …. or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

Flowserve is an "employer" as that term is used in Government Code section 12926(d).

40.  At times herein relevant, up until the time of the wrongful discharge of Ms. Overing, she was an employee of Flowserve, and Flowserve was her employer.

41.  Defendants, and each of them, were at all times herein relevant acting the course and scope of their status as an employer or in their status as an employee and/or agent of the employer, and therefore are liable for the acts of discrimination prohibited by California Fair Housing and Employment Act ("FEHA" Cal. Gov. Code §12900, et seq).

42.  At all times herein relevant, Ms. Overing was qualified for her employment and performed all of her work competently.

43.  Defendants, and each of them, by and through their conduct as alleged hereinabove, acting individually, and/or through their employees and/or agents, supervisors, officers, et cetera, violated the non-discrimination provision of FEHA as follows as alleged hereinabove, in that, Ms. Overing was subjected to:

a) discriminatory conduct on account of her age in the nature of work assignments;
b) wrongfully terminating plaintiff's employment;
c) singling out plaintiff for negative comments respecting her age resulting in harassment;
d) failing to take reasonable steps to prevent and address discrimination and/or harassment;
e) retaliating against plaintiff for seeking to protect the rights of workers at Flowserve;
f) violating plaintiff's rights and denying her protections provided by the California Labor Code.

Plaintiff's age was a substantial motivating factor in the decision of Defendants, and each of them, in engaging in the wrongful conduct, herein alleged.

44. As a direct and proximate result of the wrongful conduct of Defendants, and each of them, Ms. Overing has suffered special damages, including, but not limited to, loss of income and benefits in an amount to be determined at time of trial. She has also suffered general damages, and emotional distress in an amount to be determined at time of trial.

45. The conduct of Defendants, and each of them, was a substantial factor in Ms. Overing suffering the harm as herein alleged.

46. To protect and vindicate her rights, Ms. Overing was forced to retain an attorney. Therefore, she seeks recovery of any and all attorneys' fees incurred by plaintiff in the protection of her rights.

47. Ms. Overing is informed and believes and based such information and belief alleges that in doing the things hereinabove alleged, Defendants, and each of them, acted with malice, fraud and/or oppression and as such plaintiff is entitled to an award of exemplary damages in an amount to be determined at time of trial.

**SECOND CAUSE OF ACTION**
Age Discrimination ADEA
Against All Defendants

48.  Plaintiff incorporates the allegations of paragraphs 1 through 47 as though fully set forth hereat.

49.  At all times herein relevant, plaintiff was over the age of 40.

50.  Plaintiff has exhausted her administrative remedies as hereinabove alleged.

51.  Title 29 USC 623 provides in pertinent part as follows:

> (a) Employer practices
> It shall be unlawful for an employer—
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

Ms. Overing has been discriminated against with respect to her employment because of her age, as hereinabove alleged.

52.  Title 29 USC 626 provides in pertinent part as follows:

> (c) Civil actions; persons aggrieved; jurisdiction; judicial relief; termination of individual action upon commencement of action by Commission; jury trial
> (1) Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: Provided, That the right of any person to bring such action shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter.
> (2) In an action brought under paragraph (1), a person shall be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter, regardless of whether equitable relief is sought by any party in such action.

Ms. Overing is a "person aggrieved" as that phrase in used in 29 USC 626. She has suffered discrimination in her employment based upon her age.

53.  Ms. Overing demands a jury trial.

54.  As a direct and proximate result of such discrimination Ms. Overing has suffered damages in an amount to be determined at time of trial.

55.  As a direct and proximate result of the wrongful conduct of Defendants, and each of them, Ms. Overing has suffered special damages, including, but not limited to, loss of income and benefits in an amount to be determined at time of trial. She has also suffered general damages, and emotional distress in an amount to be determined at time of trial.

56.  As a direct and proximate result of the wrongful conduct of Defendants, and each of them, plaintiff is an entitled to an award of liquidated damages in the maximum amount provided by law.

57.  The conduct of Defendants, and each of them, was a substantial factor in Ms. Overing suffering the harm as herein alleged.

58.  To protect and vindicate her rights, Ms. Overing was forced to retain an attorney. Therefore, she seeks recovery of any and all attorneys' fees incurred by plaintiff in the protection of her rights.

**THIRD CAUSE OF ACTION**
Disparate Treatment ADEA
Against All Defendants

59.  Plaintiff incorporates the allegations of paragraphs 1 through 58 as though fully set forth hereat.

60.  At all times herein relevant, plaintiff was over the age of 40.

61. Plaintiff has exhausted her administrative remedies as hereinabove alleged.

62. As alleged hereinabove, in violation of the requirements of 29 USC 623, plaintiff was denied certain work assignments, was assigned work for which she more than qualified to do and which could have been completed by employees with less experience or skill, and was denied the ability to transfer.

63.  As alleged hereinabove, plaintiff was not the only person over the age of 40 who was subjected to denial of work assignments, negative reports, poor work assignments, et cetera.

64.  The work which should have been assigned to Ms. Overing was in fact assigned to younger workers, subjecting Ms. Overing to humiliation.

65. Ms. Overing is a "person aggrieved" as that phrase in used in 29 USC 626. She has suffered discrimination in her employment based upon her age in that she was treated worse than employees who were under 40 years of age, and that such disparate treatment was based upon Overing's age.

66.  Ms. Overing demands a jury trial.

67.  As a direct and proximate result of such discrimination Ms. Overing has suffered damages in an amount to be determined at time of trial.

68.  As a direct and proximate result of the wrongful conduct of Defendants, and each of them, Ms. Overing has suffered special damages, including, but not limited to, loss of income and benefits in an amount to be determined at time of trial. She has also suffered general damages, and emotional distress in an amount to be determined at time of trial.

69.  As a direct and proximate result of the wrongful conduct of Defendants, and each of them, plaintiff is an entitled to an award of liquidated damages in the maximum amount provided by law.

70.  The conduct of Defendants, and each of them, was a substantial factor in Ms. Overing suffering the harm as herein alleged.

71.  To protect and vindicate her rights, Ms. Overing was forced to retain an attorney. Therefore, she seeks recovery of any and all attorneys' fees incurred by plaintiff in the protection of her rights.

**FOURTH CAUSE OF ACTION**
Hostile Work Environment ADEA
Against all Defendants

72.  Plaintiff incorporates the allegations of paragraphs 1 through 71 as though fully set forth hereat.

73.  At all times herein relevant, plaintiff was over the age of 40.

74. Plaintiff has exhausted her administrative remedies as hereinabove alleged.

75. As alleged hereinabove, in violation of the requirements of 29 USC 623, plaintiff was denied certain work assignments, was assigned work for which she more than qualified to do and which could have been completed by employees with less experience or skill and was denied the ability to transfer. Ms. Overing subjected to slights and humiliation prior to her wrongful termination. The conduct to which Ms. Overing was subjected constitutes a hostile work environment which was so severe or pervasive that a reasonable person in plaintiff's position would find the work environment to be hostile or abusive.

76.  As alleged hereinabove, plaintiff was not the only person over the age of 40 who was subjected to denial of work assignments, negative reports, poor work assignments, et cetera.

77. Ms. Overing is a "person aggrieved" as that phrase in used in 29 USC 626. She has suffered discrimination in her employment based upon her age in that she was treated worse than employees

1   who were under 40 years of age, and that such hostile work environment was based upon Overing's

2   age.

3

4   78.   Ms. Overing demands a jury trial.

5

6   79.   As a direct and proximate result of such discrimination Ms. Overing has suffered damages in an

7   amount to be determined at time of trial.

8

9   80.   As a direct and proximate result of the wrongful conduct of Defendants, and each of them, Ms.

10   Overing has suffered special damages, including, but not limited to, loss of income and benefits in

11   an amount to be determined at time of trial. She has also suffered general damages, and emotional

12   distress in an amount to be determined at time of trial.

13

14   81.   As a direct and proximate result of the wrongful conduct of Defendants, and each of them,

15   plaintiff is an entitled to an award of liquidated damages in the maximum amount provided by law.

16

17   82.   The conduct of Defendants, and each of them, was a substantial factor in Ms. Overing suffering

18   the harm as herein alleged.

19

20   83.   To protect and vindicate her rights, Ms. Overing was forced to retain an attorney. Therefore,

21   she seeks recovery of any and all attorneys' fees incurred by plaintiff in the protection of her rights.

22

23                                **FIFTH CAUSE OF ACTION**
                        Wrongful Discharge in Violation of Public Policy
24                                  Against All Defendants

25   84.   Plaintiff incorporates the allegations of paragraphs 1 through 83 as though fully set forth hereat.

26

27   85.   California wage and hour laws, particularly questions of overtime pay are a matter of public
     policy:

28

The reasoning of *Brown* is directly applicable here where there is a clear public policy , embodied in section 1194, that is specifically directed at the enforcement of California's minimum wage and overtime laws for the benefit of workers…. Entitlement to overtime compensation, on the other hand, is mandated by statute and is based on an important public policy. In *Gould* v. *Maryland Sound Industries, Inc., supra*, 31 Cal.App.4th 1137 the court stated: "The duty to pay overtime wages is a duty imposed by the state; it is not a matter left to the private discretion of the employer. (Lab. Code, § 1173; *Monzon* v. *Schaefer Ambulance Service, Inc*. (1990) 224 Cal.App.3d 16, 29 [ 273 Cal.Rptr. 615].) California courts have long recognized [that] wage and hours laws `concern not only the health and welfare of the workers themselves, but also the public health and general welfare.' [Citation.] In *Monzon*, *supra*, we observed one purpose of requiring payment of overtime wages is `"to spread employment throughout the work force by putting financial pressure on the employer. . . ."' ( 224 Cal.App.3d at p. 39.) Thus, overtime wages are another example of a public policy fostering society's interest in a stable job market. [Citation.] Furthermore, as we have previously explained, the Legislature's decision to criminalize certain employer conduct reflects a determination [that] the conduct affects a broad public interest. . . . [For example,] [u]nder Labor Code sections 1174 and 1175 it is a crime for an employer to fail to keep or refuse to furnish payroll records showing the hours worked daily by, and wages paid to, its employees. Under Labor Code section 1199, it is a crime for an employer to fail to pay overtime wages as fixed by the Industrial Welfare Commission." (*Id*. at pp. 1148-1149.)

*Earley* v. *Superior Court* (2000) 79 Cal.App.4th 1420, 1429- 1430. As alleged above, Plaintiff repeatedly made complaints respecting Flowserve's violation of California wage and hour law and failure and refusal to pay Flowserve employees in accordance with California; including, but not limited to, a failure to overtime due to the employees.

86. Likewise, protection against sexual harassment in the work place is a fundamental public policy of California. As alleged above, Ms. Overing repeatedly requested that the legally mandated training be provided.

87. Plaintiff's complaints concerning Flowserve's violation of California law and fundamental public policy were known to her supervisors and the upper officers of Flowserve.

88. Plaintiff is informed and believes and based upon such information and belief allege that as a response to Plaintiff's complaints as to the failure to comply with California law, Flowserve officers embarked upon a plan to first discriminate and against and harass Plaintiff, to discourage her from continuing on in her work so that she would stop noting Flowserve's illegal activity. Plaintiff is informed and believes and based upon such information and belief allege that Flowserve was unable

to constructively terminate Plaintiff's employment it moved onto actual termination, using a pretext as the basis to dismiss plaintiff's employment.

89.  As a direct and proximate result, plaintiff has been damaged in an amount to be determined at time of trial, such losses include special and general damages, emotional distress.

90.  Ms. Overing is informed and believes and based such information and belief alleges that in doing the things hereinabove alleged, Defendants, and each of them, acted with malice, fraud and/or oppression and as such plaintiff is entitled to an award of exemplary damages in an amount to be determined at time of trial.

**SIXTH CAUSE OF ACTION**
Warn Act Violation
Against Defendant Flowserve

91.  Plaintiff incorporates the allegations of paragraphs 1 through 90 as though fully set forth hereat.

92.  The WARN Act (29 U.S.C. 210l, et seq., 20 CFR Part 639) requires an employer give 60-day advanced notice to unrepresented individual workers who may reasonably be expected to experience an employment loss. Ms. Overing was an unrepresented individual worker reasonably like to suffer a loss of employment as part of the closure of the Tulsa Flowserve plant. Flowserve is employer required to comply with the WARN Act

93.  Flowserve did not provide Ms. Overing with a 60-notice of potential employment loss in connection with the close of the Tulsa Plant.

94.  As a direct and proximate result in this loss of employment, Ms. Overing is entitled to statutory payment of 60 days of lost pay.

95.  To protect and vindicate her rights, Ms. Overing was forced to retain an attorney. Therefore, she seeks recovery of any and all attorneys' fees incurred by plaintiff in the protection of her rights.

WHEREFORE, Plaintiff prays as follows:

**First Cause of Action**

1.  Special and general damages;

2.  Emotional distress according to proof;

3.  Reasonable attorneys' fees according to proof;

4.  Exemplary damages according to proof.

**Second Cause of Action**

1. Special and general damages according to proof;

2. Emotional distress according to proof;

3. For liquidated damages;

4.  Reasonable attorneys' fees according to proof.

**Third Cause of Action**

1. Special and general damages according to proof;

2. Emotional distress according to proof;

3. For liquidated damages;

4.  Reasonable attorneys' fees according to proof.

**Fourth Cause of Action**

1. Special and general damages according to proof;

2. Emotional distress according to proof;

3. For liquidated damages;

4.  Reasonable attorneys' fees according to proof.

1

2   1.  Special and general damages according to proof

3   2. Emotional distress according to proof

4   3.  Reasonable attorneys  fees according to proof

5   4.  Exemplary damages according to proof.

6

7

8   1.  For statutory damages for lost pay to the maximum amount provided by law

9   2.  For reasonable attorney s fees according to proof.

10

11

12  1.  For pre-and-post- udgment interest in the maximum amount provided by law

13  2.  For costs of suit incurred herein

14  3.  For such other and or further relief as this Court deems  ust and reasonable.

15

16  DATED: December 3, 2021          Respectfully submitted,
                                    LAW OFFICES OF MICHAEL S. OVERING, APC
17

18                                  Michael S. Overing, Esq.
                                    Edward C. Wilde, Esq.
19                                  *Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28

Electronically FILED by Superior Court of California, County of Los Angeles on 12/06/2021 04:14 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Marquez, Deputy Clerk

Case 2:22-cv-00150-FLA-AGR   Document 1-3   Filed 01/07/22   Page 28 of 35   Page ID #:38

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Edward C. Wilde (144809)
790 E. Colorado Blvd., Ste. 320, Pasadena, CA 91101

TELEPHONE NO.: (626)564-8600      FAX NO. *(Optional):* (626)564-8600
E-MAIL ADDRESS:
ATTORNEY FOR *(Name):* Plaintiff, Theresa Overing

**FOR COURT USE ONLY**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 200 West Compton Blvd.
MAILING ADDRESS: 200 West Compton Blvd.
CITY AND ZIP CODE: Compton, 90220
BRANCH NAME: Compton Courthouse

CASE NAME:
THERESA OVERING v. FLOWSERVE U.S. INC.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] **Unlimited**    [ ] **Limited** <br> (Amount    (Amount <br> demanded    demanded is <br> exceeds $25,000)   $25,000 or less) | [ ] Counter    [ ] Joiner <br><br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | 21CMCV00324 <br> JUDGE: <br> DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[x] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify):* 1) DISCRIMINATION AND HARASSMENT, VIOLATION OF FEHA; 2) AGE DISCRIMINATION ADEA; 3) WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY; 4) WARN ACT VIOLATION
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: December 3, 2021
Edward C. Wilde
_____
(TYPE OR PRINT NAME)        ► *Edward Wilde*      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

CM-010

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/Wrongful Death
Product Liability (not asbestos or toxic/environmental) (24)
Medical Malpractice (45)
  Medical Malpractice–Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (not civil harassment) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice (not medical or legal)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)
  Contract/Warranty Breach–Seller Plaintiff (not fraud or negligence)
  Negligent Breach of Contract/Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage (not provisionally complex) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (not eminent domain, landlord/tenant, or foreclosure)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (arising from provisionally complex case type listed above) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment (non-domestic relations)
  Sister State Judgment
  Administrative Agency Award (not unpaid taxes)
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (not specified above) (42)
  Declaratory Relief Only
  Injunctive Relief Only (non-harassment)
  Mechanics Lien
  Other Commercial Complaint Case (non-tort/non-complex)
  Other Civil Complaint (non-tort/non-complex)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (not specified above) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

| SHORT TITLE: OVERING v. FLOWSERVE U.S. INC. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | **A**<br>Civil Case Cover Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br><br>1, 4, 11<br>1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: OVERING v. FLOWSERVE U.S. INC. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☑ A6037  Wrongful Termination | 1, 2, ③ |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

| SHORT TITLE: OVERING v. FLOWSERVE U.S. INC. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: OVERING v. FLOWSERVE U.S. INC. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>☐ 1. ☐ 2. ☑ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7.  ☐ 8. ☐  9. ☐ 10. ☐ 11. | ADDRESS:<br>1909 E Cashdan St. |
|---|---|
| CITY:<br>Compton | STATE:<br>CA | ZIP CODE:<br>90220 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _____ C _____ C _____ C ___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: ___December 3, 2021___

_(signature)_

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Compton Courthouse<br>200 West Compton Blvd, Rm 902, Compton, CA 90220 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>12/06/2021<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ R. Marquez _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>21CMCV00324 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Thomas D. Long | A | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 12/07/2021
   (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By R. Marquez , Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

LACIV 190 (Rev 6/18)
LASC Approved 05/06

<u>INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES</u>

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**